UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SANJUANA RODRIGUEZ,

      Plaintiff,

v.                                    Case No.  8:04-cv-2418-T-TBM

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

      Defendant.

_____/


**O R D E R**

     The Plaintiff seeks judicial review of the denial of her claim for Social Security

disability benefits.  For the reasons set out herein, the decision is affirmed.



I.

     Plaintiff was 56 years of age at the time of her administrative hearing.  She stands 5',

1" tall and weighed 236 pounds.  Plaintiff has a sixth grade education.  Her past relevant work

was as a custodian, food preparer, housekeeper, factory worker, and fruit packer.  Plaintiff

applied for disability benefits in December 2001, alleging disability as of December 1, 2001,[1]

by reason of arthritis, a bad back, asthma, loss of hearing in the right ear, hearing noises in the

left ear, depression, and dizziness.  The Plaintiff's application was denied initially and on

reconsideration.

---

[1]Plaintiff initially alleged an onset date of December 14, 1998. (R. 53).  She amended her onset date to December 1, 2001, at the administrative hearing. (R. 559).

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job after she slipped and fell on a wet ramp while working as a custodian.  Plaintiff continued to work after the fall, but she hurt more and more despite physical therapy.  In particular, Plaintiff testified that her back, neck, legs, and foot hurt when wiping tables, cleaning the ceilings, lifting the trash and books, and doing any kind of reaching or sweeping.[2]  Plaintiff described the pain in her back and that shooting down her legs and into her foot as hurting to the point where she is unable to stand.  She uses a cane to help her with her balance.  Plaintiff also described headaches that cause her neck to hurt and pain to run down her left arm.  By her account, this results from something that popped in her neck when she had her accident.  She further described occasional swelling in her shoulder, pain in her wrist, and cramping in her hands and fingers.  Plaintiff also has problems concentrating and remembering things, and she suffers from depression.

Plaintiff testified to somewhat limited daily activities.  She has difficulty with her personal needs like showering and getting dressed.  She is unable to use the bathtub and instead showers by sitting on a small plastic step.  Her husband helps her get dressed. Plaintiff has trouble falling asleep and gets up frequently during the night.  She takes ten to thirty minutes naps throughout the day.  By Plaintiff's estimation, she can stand for about thirty to forty minutes at a time on a normal day, and she can walk for ten to fifteen minutes before needing to rest.  She could not estimate how long she could sit except to acknowledge

---

[2]Plaintiff also testified that she could not perform her other past jobs such as assembly line work, fruit packer, or food preparer because of the standing, bending, lifting, sweeping, mopping, and wiping involved.

"more or less" than an hour.  Plaintiff stated that she can normally lift and carry about fifteen pounds.  If she drops something, she occasionally can use a cane and a chair to bend over and pick up the item, but sometimes her husband will pick it up for her.  Plaintiff is able to climb stairs with some pain in her back, but she must go down the stairs backward.  Plaintiff is unable to reach up because of her back and foot, and it hurts her back to hold out her hands (such as when washing dishes).  Plaintiff testified that she must use a nebulizer for twenty minutes every four hours for her asthma.  At the time of her hearing, she had a pending worker's compensation case but was not receiving benefits.  See Plaintiff's testimony (R. 555-74, 579-83).

The ALJ also took testimony from Dr. Everett L. Tessmer, a vocational expert (hereinafter "VE"), who testified upon a hypothetical of a person with Plaintiff's age, education, and work experience who has the residual functional capacity to perform medium exertional work with occasional limitations for prolonged standing and coping with work stress but capable of performing routine, repetitive tasks.  Upon this hypothetical, the VE opined that Plaintiff could perform light and sedentary exertional work such as alarm monitor, companion, food assembler, vegetable sorter, and food inspector, jobs that would afford a sit/stand option and allow the Plaintiff to change her posture.  As to medium work, the VE opined that Plaintiff could return to her housekeeping job at the Holiday Inn or her work as a kitchen helper at Cypress Gardens.  Additionally, the VE noted that Plaintiff's assembly line job was light, and there were jobs in compression molding and injection molding where sit/stand options would be available.  The VE opined that Plaintiff could also return to her assembly work based on the hypothetical question.  Upon questioning by Plaintiff's counsel, the VE opined that any of these jobs would allow her to use a nebulizer every four hours.  The

VE acknowledged that there would be some reaching in some of the jobs such as the packer

and assembly line jobs.  The VE opined that there were other assembly line jobs available to

Plaintiff even if she had the additional restrictions of lifting fifteen pounds occasionally,

pushing, pulling and carrying fifteen pounds, and only occasional bending, twisting, or

stooping.  See VE's testimony (R. 75-82).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed adequately by the parties' memoranda and are addressed herein

as necessary.

By his decision of October 29, 2003, the ALJ determined that while Plaintiff has

severe impairments related to torn patellar meniscus, depression, spinal disc degeneration,

and asthma,[3] she nonetheless had the residual functional capacity to perform a restricted range

of medium exertional work.  Upon this finding and testimony of the VE, the ALJ concluded

that Plaintiff could perform her past work as a housekeeper, kitchen aide, and factory worker.

In the alternative, the ALJ concluded that if Plaintiff could not perform her past work, she

could perform jobs available to her in the local and national economy such as security

monitor, small products (food) assembler, vegetable sorter, companion with some limitations,

or products inspector.  Upon this conclusion, the Plaintiff was determined to be not disabled.

(R. 16-29).  The Appeals Council denied Plaintiff's request for review, and the ALJ's

decision became the final decision of the Commissioner.

---

[3]The ALJ also discussed evidence of several conditions that were either non-severe or
that predated the relevant period including auditory problems with claimed minor
auditory/balance loss, esophagitis, shoulder arthralgia, claimed sleep apnea, colon polyps,
hemorrhoids, urinary bleeding, a foot fracture, a broken toe, foot capsulitis, and inter-toe
neuritis.  (R. 19-20).

4

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises four claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  There is no substantial competent evidence to support a finding of a limited range of medium work;

(2)  The decision of the ALJ ignores or overlooks the majority of the claimant's impairments;

(3)  The ALJ is not a medical examiner and cannot determine Ms. Rodriguez's capacity to hear at the hearing; and

(4)  Ms. Rodriguez is disabled according to the Grids.

Plaintiff's first three claims each challenge the ALJ's findings at step four of the sequential evaluation and are addressed together herein.  First, Plaintiff argues that substantial evidence does not support the ALJ's finding that she can lift fifty pounds and therefore

perform medium exertional work.[4]  Plaintiff contends that the finding is inconsistent with the

treating source opinions the ALJ accepted as controlling, namely, those of Dr. Michael Band

and Dr. Marc Gerber.  She also contends that no treating or examining physician opined that

she could frequently carry twenty-five pounds and the ALJ distorted the evidence by stating

that doctors sometimes permitted "all activity."[5]  Next, Plaintiff argues that the ALJ erred by

overlooking, ignoring, and/or rejecting limitations relating to the fact that she is deaf in one

ear, has to walk with a cane, needs to use a nebulizer for asthma, and has significant pain in

her back and knee.  By her account, the uncontroverted medical record supports these

restrictions.  Lastly, Plaintiff argues that the ALJ inadequately assessed her hearing

impairment by considering that she did not have difficulty understanding him at the hearing

and concluding that the evidence did not confirm such an impairment.  To this end, Plaintiff

contends that the ALJ is not a medical examiner and cannot determine the extent of her

impairment at the administrative hearing. She contends further that the ALJ overlooked

testing that revealed a "bilateral profound hearing loss in the right ear."

    At step four of the sequential evaluation, an ALJ is called upon to assess a claimant's

residual functional capacity.[6]  20 C.F.R. § 404.1520(a)(4)(iv).  Residual functional capacity is

---

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting
or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we
determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

[5]Plaintiff also appears to suggest that the ALJ improperly rejected the opinions of the
non-examining, state agency doctors who opined she could perform light exertional work.
Light work is defined as work that involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).

[6]At this step, the ALJ also compares the claimant's RFC with the physical and mental
demands of her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is still
able to perform her past relevant work, she will be found not disabled.  Id.  If the claimant is

an assessment based on all relevant evidence of a claimant's remaining ability to do work

despite her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20

C.F.R. § 404.1545(a)).  The focus of this assessment is on the doctor's evaluation of the

claimant's condition and the medical consequences thereof.  Id.  This assessment also requires

an ALJ to consider all of the claimant's impairments, including subjective symptoms such as

pain.  See 20 C.F.R.§ 404.1545.  If a claimant can still do the kind of work she has done in the

past, then the Regulations require that she be found not disabled.  20 C.F.R. § 404.1520(f).

At this stage of the evaluation process, the burden is on the Plaintiff to show that she can no

longer perform her past relevant work.  Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir.

1986).

Here, after reviewing the medical evidence of record, the ALJ addressed Plaintiff's

residual functional capacity, finding that:

> [e]ven taking the claimant's conditions together, they cannot preclude her
> from performing (at least limited) even medium activity.  It has been shown
> that only a few ailments are really significant.  The examining clinicians
> whose opinions have been accepted as controlling (including, but not only,
> Drs. Band, Broom, Gerber, Nathan B. Hill, Jeffrey P. Rosen and G. Grady
> McBride in August 2002) did not impose extreme restrictions or total
> disability ratings, and most of them ordered her back to full-time duty,
> which she seemed capable of performing despite several years with her
> various ailments.  In fact, almost all of the treating and examining sources
> were unanimous in finding at least a capability for "light" duty, and they all
> had familiarity with her case, and (sometimes) speciality training in her
> areas of complaints.  (The above listed examples represent a mere sampling
> of the numerous recommendations that she return to some form of
> employment).  I, however, go further and find an ability for up to "medium"
> duty, giving greater credence to the more specific permission for lifting 25
> pounds, and sometimes all activity.  This statement of lifting capacity, with

---

unable to perform past relevant work, the ALJ will proceed to the last step of the sequential
analysis.  Id. at § 404.1520(e), (f).

no stated restriction on ambulation, is more applicable for Social Security

purposes (20 CFR 404.1504).

(R. 23).  After also considering Plaintiff's subjective allegations of pain and resulting

limitations, the ALJ concluded that Plaintiff retained the residual functional capacity to

perform "simple, routine, repetitive medium work lifting fifty pounds occasionally (and

twenty pounds frequently), with a sit/stand option, walking, pushing and pulling for a

complete 6-8 hour work day, wherein the employer tolerates occasional lapses in prolonged

standing and occasional restrictions in coping with stress."  (R. 26).  Similarly, the

hypothetical question the ALJ posed to the VE allowed for routine, repetitive medium

exertional work with occasional limitations for prolonged standing and coping with work

stress.  (R. 577).  In response, the VE testified that the Plaintiff could perform her past work

as a cleaner/housekeeper (medium), kitchen helper (medium), and assembly line worker

(light).[7]  (R. 578-79).  The VE also indicated that, "there's nothing that says that she couldn't

use a nebulizer in any of these jobs."  (R. 579).

       After thorough review of the record, I agree with Plaintiff that substantial evidence

does not support the ALJ's finding that she can occasionally lift fifty pounds and therefore

perform medium exertional work.  In support of this finding, the ALJ appears to have relied

on the opinions of Dr. Gerber, Dr. G. Grady McBride, and Dr. Jeffrey R. Rosen.  See (R. 23).

Those opinions, however, do not provide substantial support for the ALJ's finding.  For

example, Dr. Gerber opined that Plaintiff should avoid lifting over twenty to twenty five

pounds.  See (R. 265-66, 490).  His opinion clearly does not indicate that Plaintiff could lift

---

[7]To the extent that the ALJ's hypothetical question is read to not include a sit/stand
option, the VE testified that each of these positions would afford such.  See (R. 578, 580).

fifty pounds occasionally or lift twenty-five pounds frequently, both of which are required to

perform medium exertional work.  While Drs. McBride and/or Rosen reported that Plaintiff

"could return to regular duty without restriction," see (R. 505), their opinions are inconsistent

with the bulk of the other opinions on which the ALJ relied and are inconsistent with the

ALJ's ultimate determination of Plaintiff's residual functional capacity.[8]  Because the ALJ's

residual functional capacity finding for medium exertional work is not supported, it

necessarily follows that his determination that Plaintiff could perform her two past medium

exertional jobs (cleaner/housekeeper and kitchen helper) also is unsupported.

       I disagree, however, with Plaintiff's summary statement that the evidence does not

even support a finding of light exertional work.  Inclusive in the ALJ's finding that Plaintiff

could perform medium exertional work is that Plaintiff also could perform light and sedentary

exertional work.  See 20 C.F.R. § 404.1567(c).  Substantial evidence in the record

demonstrates that Plaintiff retained the ability to perform light (or sedentary) exertional work.

See, e.g., (R. 263, 265-66, 268, 296, 490).  Plaintiff does not dispute that the majority of her

doctors were of the opinion that she retained the ability to perform light exertional work, i.e.,

she could lift or carry twenty pounds.[9]  And, the ALJ accepted these opinions as controlling.

See (R. 23).  To the extent that Plaintiff relies on Dr. Band's opinion that she was restricted to

lifting fifteen pounds to demonstrate that she could not perform light exertional work, her

reliance on such is misplaced.  Plaintiff ignores that Dr. Band regularly opined that she was

_____

    [8]Dr. Band also opined early on that Plaintiff could return to regular work and had no
restrictions.  (R. 322).  However, that opinion was rendered prior to Plaintiff's amended onset
date and he later restricted Plaintiff to light work.

    [9]Plaintiff even suggests in passing that the ALJ wrongly rejected the opinions of the
non-examining, state agency doctors who concluded that she could perform light work.

restricted to lifting no more than twenty pounds.  See, e.g., (R. 282, 296).  Moreover, as

revealed by his notes, Dr. Band indicated that he would change the twenty pound restriction

to a fifteen pound restriction "if that would help her."  (R. 491).  He did not indicate that the

change was medically necessary.  As such, the fact that Dr. Band indicated a fifteen pound

lifting limitation on his last report is misleading when considered in context.[10]

I also disagree with Plaintiff's contention on that the ALJ ignored, overlooked, or

should have assessed (additional) limitations with respect to her back and knee pain.  The

ALJ clearly did not ignore or overlook Plaintiff's back and knee impairments and resulting

pain because he found that they were severe impairments and assessed a sit/stand option as a

result of such.  (R. 19, 26).  As for her claimed deafness in the right ear, the ALJ noted that

Plaintiff has Meniere's disease, an inner ear disorder, with "minor claimed right

auditory/balance loss."  (R. 19).  He also noted that she did not have trouble understanding

him at the hearing[11] and that there was no confirmation of "any real right auditory deafness on

audiometry."  Id.  Plaintiff correctly points out that audiometric testing revealed a "bilateral

_____

[10]Also misleading is Plaintiff's statement that "light duty would require frequent
lifting, which the doctors prohibited."  On my review of the record, I did not find any credible
opinions indicating that Plaintiff was unable to lift up to ten pounds on a frequent (occurring
one-third to two-thirds of an eight-hour workday) basis as required by the exertional demands
of light work.  While Dr. Gerber checked boxes on a form that stated "no excessive repetitive
lifting [or] lifting over 20-25 pounds" and included in a report the "moderate duty restrictions
of no repetitive lifting or bending over 20-25 pounds," see (R. 266, 490), there is no
indication that such is inconsistent with the "frequent" lifting of ten pounds.

[11]It is improper for an ALJ to substitute his opinion on a claimed impairment for that
of Plaintiff's doctors.  See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir.1982); Graham
v. Bowen, 786 F.2d 1113, 1115 (11th Cir.1986); see also Marbury v. Sullivan, 957 F.2d 837,
840-41 (11th Cir.1992).  Even assuming that the ALJ here engaged in this type of improper
behavior when considering Plaintiff's claimed right ear impairment, the error is harmless
because Plaintiff did not testify to any limitations relating to her right ear condition.

11

profound hearing loss in the right ear," see (R. 384), and that the ALJ apparently ignored this

test result.  However, any error relating to the ALJ's consideration of Plaintiff's right ear

problem is harmless.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Mays v.

Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fed. R. Civ. P. 61.  Notably, Plaintiff does not

allege any hearing-related restrictions that the ALJ should have considered but did not.

Moreover, the doctor treating Plaintiff's ear impairment noted that, "I do not feel that a

hearing aid for the right ear is indicated with normal hearing in the left ear."  (R. 384).  As the

Commissioner notes, there is no indication from the record that Plaintiff's hearing impairment

affected her ability to work.  With respect to Plaintiff's need to use a nebulizer four times a

day, the ALJ acknowledged this testimony as well as Plaintiff's claimed flare-ups of asthma.

(R. 18, 22).  To the extent that the ALJ may have erred by not including use of a nebulizer in

Plaintiff's residual functional capacity, the error is harmless in light of the VE's testimony

that the use of such would not preclude Plaintiff from performing her past jobs (R. 579).  See

Diorio, 721 F.2d at 728; Mays, 837 F.2d at 1364; Fed. R. Civ. P. 61.  Finally, contrary to

Plaintiff's contention, the ALJ considered her allegation that she has to use a cane when

walking.  See (R. 20).  The ALJ discounted the allegation on the lack of objective findings

indicating the need for such, and he noted that there were no stated restrictions on

"ambulation."[12]  (R. 22-23).  These reasons are rational and supported by the record.

       In conclusion, while the decision is certainly not error free and, in particular, while

the ALJ's finding that Plaintiff could perform medium work is unsupported, the record

---

[12]In addition, although Plaintiff's podiatrist noted in May 2002 that Plaintiff needed "ambulatory assistance with a cane," see (R. 404), upon orthopedic examination three months later no such requirement was noted, see (R. 502-505).

supports the finding that Plaintiff could perform light exertional work with the additional

nonexertional limitations identified by the ALJ.  In addition, the VE testified that Plaintiff

could perform her past light exertional work as an assembly line worker based on the

limitations in the ALJ's hypothetical question.  The job description cited by the VE also

confirms that if Plaintiff could perform light exertional work, she could perform her past work

as an assembly line worker.  See U.S. Dep't of Labor, Dictionary of Occupational Titles

§ 739.687-030 (4th ed., rev. 1991).  Thus, despite certain errors, substantial evidence supports

the ALJ's finding at step four that Plaintiff can perform her past work as an assembly line

worker and is therefore not disabled.

        Because that finding is supported by substantial evidence, Plaintiff's last claim need

not be addressed.  Application of the grids does not come into play until step five of the

evaluation process.


                                          IV.

        For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

        **Done and Ordered** at Tampa, Florida, this 28th day of February 2006.


                                          THOMAS B. McCOUN III
                                          UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of record

                                          13